UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH M. GLISSON,

    Plaintiff,

and

SAM STEARNS and JOHN B. WALLACE,

    Plaintiff-Intervenors

v.

UNITED STATES FOREST SERVICE,
HURSTON A. NICHOLAS, Supervisor, Shawnee
National Forest, and TIM POHLMAN, District
Ranger, Shawnee National Forest,

    Defendants,

and

SHAWNEE TRAIL CONSERVANCY,

    Defendant-Intervenor

Case No. 99-cv-4189-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the Rule 60(b)(5) motion to dissolve injunction and end judicial oversight filed by defendants the United States Forest Service ("Forest Service"), Shawnee National Forest ("Shawnee") Supervisor Hurston A. Nicholas and District Ranger Jeffrey C. Seefeldt (Doc. 153).[1] The Court construes the motion as being pursuant to Federal Rule of Civil Procedure 60(b)(5) for relief from judgment because the judgment has been satisfied and it is no longer equitable to apply it prospectively. Plaintiff-intervenors John

---

[1] Since the motion was filed, current District Ranger Tim Pohlman has automatically been substituted as a defendant for former District Ranger Jeffrey C. Seefeldt pursuant to Federal Rule of Civil Procedure 25(d).

B. Wallace and Sam Stearns responded to the motion (Docs. 154 & 157) objecting to the end of the Court's oversight of this matter.

I.      **Background**

This case has taken the Court down a long and interesting trail. It began in August 1999 when plaintiff Joseph M. Glisson, an ardent *pro se* environmentalist litigant, filed this suit complaining that the Forest Service had improperly decided (1) to allow equestrians to use user-created trails in the Lusk Creek and Jackson Hole natural areas in the Shawnee, (2) to allow outfitters and guides to operate on the Shawnee without special use permits and (3) to allow such operations without conducting an environmental analysis. Shortly thereafter, the Shawnee Trail Conservancy, a coalition of horseback riding enthusiasts, intervened in the case. In March 2000, the Court entered judgment that included declaratory relief finding that the Forest Service's (1) failure to require special use permits for outfitters and guides on the Shawnee and (2) failure to conduct an environmental analysis for outfitter and guide applications were improper.

In late 2002, Wallace and Stearns became upset with the Forest Service's efforts at complying with the March 2000 judgment and sought to intervene in the case to enforce the judgment. After a hearing in April 2003, the Court issued injunctive relief designed to speed up the Forest Service's special use permit review process. Nevertheless, the parties' relationship continued on a downward spiral characterized by their inability to trust or communicate clearly with each other. Eventually, with all parties' assent, the Court took the unusual step of becoming a mediator instead of an adjudicator. If the Court was going to resolve the issues raised by this litigation for the present and future, it had to think outside the box.

The Court's mediation efforts included numerous *ex parte* sessions with each contingent and culminated in a visit to Lusk Creek Wilderness on one of the coldest days of January 2005.

In a prior order, the Court commented on the condition of the area at that time:

> The influence of modern man on the area is negligible. With the exception of noticeable but unobtrusive natural area boundary markings, it truly retains a great deal of its "primeval character" and its natural condition. However, the Court also saw damage to trails and areas near them such as, for example, where equestrians have crossed Lusk Creek illegally, mud (frozen at the time) that had been churned up by horses, rare plant species that had been trampled by horses, trees that had been damaged by horses tethered close by and spots where the lack of vegetation (from horse traffic and other causes) had allowed significant erosion. The Court also saw an approved equestrian creek crossing on a designated equestrian trail that had been constructed by the Forest Service to withstand horse traffic without significant environmental degradation as well as a sensitive area of the rare black cohosh plant that the Forest Service had closed to equestrian *and* foot traffic. In sum, the Court saw the attraction, the problem and the solution, all in a day.

Report & Recommended Resolution at 8, Doc. 92 (Mar. 1, 2005).

The Court ultimately recommended a resolution it believed was fair and equitable to all parties. The solution involved trail management, equestrian restrictions, law enforcement, resource monitoring and public education. The measures were intended to be temporary until the Forest Service could implement a trails designation plan. The recommendation further recognized that, as the conflicts between the parties did not arise overnight, they would not be resolved overnight either. Messrs. Glisson, Wallace and Stearns and the Shawnee Trail Conservancy accepted the recommended resolution, and on March 17, 2005, the Court ordered its terms to be implemented.

Since that time, the Forest Service has obtained substantial funding to implement the Court's March 17, 2005, order and has made remarkable progress on rehabilitating the Lusk Creek Wilderness to a wilderness state. The Forest Service has completed the appropriate environmental analysis and continues to monitor the Lusk Creek Wilderness, and equestrian guides and outfitters now operate there under permit. In Forest Service's opinion, the Lusk

Creek Wilderness is being protected and preserved and the injunctive relief and judicial oversight ordered by the Court is no longer required. For this reason, it has moved to vacate the Court's injunctions and oversight.

## II.     Analysis

Under Federal Rule of Civil Procedure 60(b)(5), the Court may, in its discretion and on terms that are just, relieve a party from a final judgment, order or proceeding if the judgment has been satisfied or if it is no longer equitable to apply the judgment prospectively. The Court has flexibility to exercise its Rule 60(b)(5) power in light of changes that occur during the life of the judgment. *Rufo v. Inmates of Suffolk Co. Jail*, 502 U.S. 367, 380-81 (1992).[2] This is particularly true in litigation like the case at bar where the Court's orders reach beyond the parties and impact the public's right to sound, efficient government. *Id.* at 381. The party seeking relief from judgment bears the burden of establishing that changed circumstances of fact or law warrant relief. *Id.* at 383. The Court should then consider whether the relief sought is suitably tailored to the changed circumstances. *Id.*; *see, generally, United States v. Krilich*, 303 F.3d 784, 790 (7th Cir. 2002).

The factual circumstances that existed when the Court issued its judgment and orders in this case have changed substantially. The conditions in the Lusk Creek Wilderness about which the plaintiff and plaintiff-intervenors originally complained no longer exist. Equestrian outfitters and guides now operate under permit in accordance with an established permit program. The Forest Service has studied the impact of the trail system on the environment and has improved

---

[2]While *Rufo* involved modification to a consent decree, its holding applies equally to cases involving other types of equitable relief. *Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1187 (7th Cir. 1994) (citing *Matter of Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993)).

4

the trail system by creating or improving trails that are fit for equestrian traffic and closing those that are not. The Forest Service clearly continues to make diligent efforts toward restoring the wilderness state of Lusk Creek Wilderness.

In sum, the measures ordered by the Court throughout this litigation are no longer needed because the facts on the ground have vastly changed – for the better. While the Court understands the parties' desire for ongoing judicial oversight to ensure the management of Lusk Creek Wilderness continues on its present, positive path, the oversight is no longer necessary and is, indeed, inappropriate in light of the Forest Service's independent responsibility as a part of the Executive Branch to manage its affairs without undue interference from the Judicial Branch.

### III. The Future

The end of Court oversight does not mean the end of progress in the Lusk Creek Wilderness. In its March 2005 recommended resolution, the Court noted that the restoration of Lusk Creek Wilderness to a condition it was in ten to fifteen years ago would not happen overnight and would take years to accomplish. The task of managing the Lusk Creek Wilderness and other wilderness areas so as to preserve and protect its pristine character has just begun.

Future management of the Lusk Creek Wilderness will be challenging. It is critically important for the Forest Service to continue to strike an acceptable balance between equestrian use of the Lusk Creek Wilderness and other wilderness areas and protection of the natural resources there. The common goal of *all* parties to this litigation is to preserve the wilderness character of the area for the use and enjoyment of horseback riders and hikers alike while at the same time to minimize the adverse impact of that use.

The support of the Forest Service Regional Office is essential to achieving that goal. The

Court has always been mindful that the Shawnee National Forest Supervisor has had limited personnel and funds to dedicate to the Lusk Creek Wilderness. The tremendous progress that has been made in the Lusk Creek Wilderness over the past few years is due primarily to the financial support for the area from the Forest Service Regional Office. That support has enabled the Shawnee to complete the Trails Designation Project of 2006 and will enable it to continue trail work through fiscal year 2010. This is a great start but only the beginning of the commitment by Congress and the Forest Service needed to provide funds and other resources to complete the trails plan that is only now in the early stages of implementation.

In addition to adequate funding, communication and cooperation among interested parties is essential to overcoming forest management challenges. The Court is optimistic that the parties' work in this litigation has established a foundation for resolving their disagreements about the future management of the Lusk Creek Wilderness and other areas of the Shawnee without resorting to the Court. Resources are much better spent in protecting the environment and managing the use and enjoyment of the Shawnee than in litigation. The Court is proud that in this case the parties joined together for the common good and devoted their energy and resources to achieving the cooperative and multiple-use purposes for which the Shawnee generally, and wilderness areas in particular, were created. The measures that have been taken by the Forest Service, in cooperation with all other parties, mark the beginning of the process of restoring the natural beauty as well as preserving and protecting designated natural and wilderness areas of the Lusk Creek Wilderness, one of the crown jewels of Southern Illinois, for the use and enjoyment of current and future generations.

Communication and cooperation among interested parties must be accompanied by understanding and trust. In light of its limited resources, the Forest Service will be forced to

prioritize the many things yet to be done to protect the Lusk Creek Wilderness while providing multi-use recreation enjoyment for both equestrian and hikers. In setting its priorities, the Forest Service must communicate with all interested parties, and all involved must realize that there are bound to be disagreements that need to be resolved by compromise and patience. The parties to this litigation and the public need to understand that managing the Lusk Creek Wilderness, or any forest area, is not easy and often presents a moving target. Forces of nature unexpectedly interrupt and change Forest Service plans and priorities. For example, on its recent site visit to the Lusk Creek Wilderness, the Court saw an equestrian river crossing that had been severely eroded by the 2008 spring floods of Lusk Creek. The Forest Service will need to repair the crossing that Mother Nature damaged, a project it had not previously factored into its plans. Trees fall across trails and need to be removed. Rain water decides to take unanticipated drainage routes and cause erosion in unexpected places. These types of things required the Forest Service to constantly adjust its plans to maintain trails and sensitive environmental areas and to minimize and prevent adverse impact on the area. Interested parties must tolerate some flexibility in the march toward the common goal of restoring and maintaining wilderness.

The Court encourages the environmentalist and equestrian contingents to continue their cooperative efforts with the Forest Service in the implementation of the Trails Designation Project as well as other plans and proposals to protect other wilderness areas. This cooperation can and should include enlisting the support of national, state and local governmental officials and the press in an effort to keep financial resources flowing to the Shawnee so that the management plans developed during this litigation stay on track. Citizens have greater potential than the Court to ensure long-term protection of the Shawnee.

## IV.     Conclusion

In concluding this order, the Court acknowledges and thanks several individuals who were instrumental in providing information, understanding and perspective to the Court during the course of this litigation.  Such contributions may well have resulted in a historic resolution of problems involving the Shawnee.  Only time will tell.

Although he was not involved in later stages of the litigation, Joseph Glisson was instrumental to this case.  The agreed resolution regarding the Lusk Creek Wilderness would not have occurred if Glisson had not instituted this action and inspired John Wallace and Sam Stearns to take up his cause after he became unable to do so himself.  The case Glisson filed provided the springboard for the Court's attempted global resolution of broader, deeper conflicts between the various groups.  The information and perspective communicated by Glisson, Wallace and Stearns were invaluable.

Likewise, the Court acknowledges the contribution of the Shawnee Trail Conservancy and its members.  The group's president, Linda Grannaman, as well as members Denny and Connie Maxon, Dick Manders, Michael Scott, Larry Frye, and others gave the Court information and a perspective of equestrians and equestrian campground interests and issues that the Court would not have otherwise had.

The Court also acknowledges the extraordinary time and effort expended by Forest Service Supervisor Allen Nicholas and his dedicated staff of Jeff Seefeldt, Tim Pohlman, Brian Borne, Richard Blumweaver and others, for the work they did to assist the Court in understanding the issues and problems they encounter in discharging their obligation to manage the Lusk Creek Wilderness.  They have the primary, day-to-day responsibility for protecting the environment of the Lusk Creek Wilderness and other wilderness areas while at the same time

permitting the use and enjoyment of those areas by hikers and equestrians alike.  Attorney Ron Mulach, from the Forest Service Regional Office, was also of great assistance to the Court and the parties in helping implement the Court's recommendations.

The Court thanks all parties for the time they took away from their occupations and normal daily routines to accompany the Court on its three site visits into the Lusk Creek Wilderness during the course of this litigation.  These site visits were instrumental in the parties' coming to understand the common goals they all share.

Finally, the Court acknowledges the assistance of the Southern Illinois congressional delegation – especially the efforts of Congressman John Shimkus, in whose district the Lusk Creek Wilderness lies – in encouraging the Forest Service to dedicate additional resources to the Shawnee to implement the Court's recommendations.  Those efforts have paid off in the additional funding allocated to protect the Lusk Creek Wilderness environment while improving the equestrian trail system.  The Court is confident that Congressmen Shimkus and Congressman Jerry Costello, whose district encompasses other parts of the Shawnee, will continue their efforts in Congress and with the incoming administration, the Department of Agriculture and the Forest Service to provide the necessary resources for the Shawnee.

For the foregoing reasons, pursuant to Rule 60(b)(5), the Court **GRANTS** the motion to dissolve injunction and end judicial oversight (Doc. 153) and **VACATES** the injunctive relief awarded and judicial oversight ordered in its March 31, 2000, judgment (Doc. 34), its April 16, 2003, order and injunction (Doc. 63) and in its March 17, 2005, order (Doc. 94).  The Court will send a copy of this order to the following:  United States Senator Richard Durbin, President-Elect Barack Obama's successor in the United States Senate, United States Congressmen John Shimkus, United States Congressman Jerry Costello, State Representative Brandon Phelps, State

Representative John Bradley, State Representative Mike Bost, and the County Board Chairmen of Saline and Pope Counties.

**IT IS SO ORDERED**.
**DATED:  December 8, 2008**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **UNITED STATES DISTRICT JUDGE**